UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| STATE OF TEXAS, AND MAYO PHARMACY, INC., A NORTH DAKOTA CORPORATION,<br>*Plaintiffs*,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE FOR CIVIL RIGHTS,<br>*Defendants*. | No. 7:23-cv-00022-DC |

## PLAINTIFFS' AMENDED VERIFIED COMPLAINT

The Biden Administration has repeatedly attempted to impose through executive fiat a federal right to abortion that does not exist. In the Administration's war against *Dobbs v. Jackson Women's Health*, Defendants have issued a "guidance" document and associated press release that, if allowed to remain effective, require pharmacies to dispense abortion-inducing drugs in violation of State law (collectively, the "Pharmacy Mandate")—purportedly as a condition of receiving Medicare and Medicaid funds.

But whether the Biden Administration likes it or not, the question of abortion is up to the people's elected representatives—not unelected bureaucrats. The Biden Administration's attempt to inject itself into that question is both procedurally and substantively illegal. The

Pharmacy Mandate was adopted without following the required procedures. It misrepresents federal law. It usurps pharmacies' duty to comply with Texas law. It misconstrues and violates the Spending Clause. And it violates the religious freedom rights of pharmacies across the nation. By any measure, the Pharmacy Mandate is improper.

The Court should vacate the Pharmacy Guidance, set it aside, and enjoin Defendants' enforcement of it.

## I. PARTIES

1. Plaintiff the State of Texas is a sovereign State of the United States.

2. Plaintiff Mayo Pharmacy, Inc. (Mayo Pharmacy) is a North Dakota corporation located at 303 North 4th Street, Bismarck, North Dakota 58501.

3. Defendant Xavier Becerra is Secretary of the United States Department of Health and Human Services (HHS). He is sued in his official capacity.

4. Defendant HHS is a cabinet-level executive branch department of the United States.

5. Defendant Department of Health and Human Services Office for Civil Rights (OCR) is a division of HHS.

## II. JURISDICTION & VENUE

6. This Court has jurisdiction under 5 U.S.C. §§ 702 and 703 and 28 U.S.C. §§ 1331, 1346, and 1361.

7. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1361, 2201, and 2202, and 42 U.S.C. § 2000bb-1, et. seq.

8. This Court is authorized to award attorneys' fees, costs, and expenses under 28 U.S.C. § 2412.

9. Venue is proper in this District under 28 U.S.C. § 1391.

## III. BACKGROUND

### A. The Biden Administration's Response to Dobbs

10. On June 24, 2022, the Supreme Court of the United States overturned *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022). The Supreme Court held that "the Constitution does not confer a right to abortion" and "does not prohibit the citizens of each State from regulating or prohibiting abortion." *Id.* at 2279, 2284.

11. The Biden Administration's attempt to nullify *Dobbs* began that very day when President Biden held a press conference and announced that "[t]he only way we can secure a woman's right to choose and the balance that existed is for Congress to restore the protections of *Roe v. Wade* as federal law."[1]

12. The Administration's nullification effort continued with a statement from Attorney General Merrick Garland that misinterpreted federal law. Garland stated, "States may not ban Mifepristone"—a drug also known as RU 486 that can be used to cause an abortion during the early part of a pregnancy—"based on disagreement with the FDA's expert judgment."[2] In fact,

---

[1] *Remarks by Pres. Biden on the Supreme Court Decision to Overturn Roe v. Wade*, The White House (June 24, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/06/24/remarks-by-president-biden-on-the-supreme-court-decision-to-overturn-roe-v-wade/ (last visited Feb. 6, 2023).

[2] *Atty. Gen. Merrick B. Garland Stmt. on Supreme Court Ruling in Dobbs v. Jackson Women's Health Org.*, Dept. of Justice, https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-supreme-court-ruling-dobbs-v-jackson-women-s (last visited Feb. 6, 2023).

*Dobbs*'s holding that "[t]he Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion," 142 S. Ct. at 2284, permits states to ban abortions even when induced through the use of Mifepristone.

13. The next day, Defendant Secretary Becerra stated in an interview that Americans "can no longer trust" the Supreme Court.[3] When asked what he was doing "in response to the Court's decision," Beccera responded, "we have no right to do mild. And so we're going to be aggressive and go all the way."[4]

14. On July 8, 2022, President Biden issued Executive Order 14,076, titled "Protecting Access to Reproductive Healthcare Services." 87 Fed. Reg. 42053 (2022). Among other things, that Order required Becerra to submit a report to the President "identifying potential actions: (A) to protect and expand access to abortion care, including medication abortion; and (B) to otherwise protect and expand access to the full range of reproductive healthcare services, including actions to enhance family planning services such as access to emergency contraception." *Id.* at 42053–54.

15. In response to President Biden's Executive Order, federal officials and agencies promulgated several mandates relating to the provision of abortions and abortion-inducing drugs.

16. The Administration opened one front of its war on *Dobbs* on July 11, 2022, when HHS promulgated an Abortion Mandate contorting the Emergency Medical Treatment and Labor Act into a directive that hospitals and emergency-medicine physicians perform abortions as a condition

---

[3] *HHS Secy. Becerra talks women's future with abortion following Roe v. Wade decision* (NBC News broadcast June 25, 2022), https://www.nbcnews.com/video/women-s-future-with-abortion-implementing-harm-reduction-with-addiction-142836293922, at 1:45 (last visited Feb. 6, 2023).

[4] *Id.* at 2:19, 2:59.

of receiving Medicaid and Medicare funds.[5] While a district court has enjoined enforcement of that diktat in Texas,[6] the Administration has made clear that it is fighting a hot war: it is suing the State of Idaho to obtain a declaration that a federal anti-patient-dumping statute somehow overrides duly-enacted state abortion restrictions.[7]

17. Just two days later, the Biden Administration opened yet another front in its war on *Dobbs*: the Pharmacy Mandate. Defendants issued a press release[8] and a document titled, "Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services" (together, "Pharmacy Mandate").[9] The Mandate purports to require pharmacies that receive Medicare and Medicaid payments to stock and dispense drugs for elective abortion purposes. It threatens legal action against those pharmacies and pharmacists that do not.

---

[5] *Reinforcement of EMTALA Obligations specific to Patients who are Pregnant or are Experiencing Pregnancy Loss*, Ctrs. for Medicare & Medicaid Servs. (July 11, 2022), https://www.cms.gov/files/document/qso-22-22-hospitals.pdf (last visited Feb. 28, 2023) (Exh. 3).

[6] *Texas v. Becerra*, No. 5:22-cv-185-H (N.D. Tex.) (Jan. 13, 2023).

[7] *United States v. Idaho*, No. 1:22-CV-329, Dkt. No. 1 (D. Idaho, Aug. 2, 2022).

[8] *HHS Issues Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services*, HHS, https://www.hhs.gov/about/news/2022/07/13/hhs-issues-guidance-nations-retail-pharmacies-clarifying-their-obligations-ensure-access-comprehensive-reproductive-health-care-services.html (last visited Feb. 28, 2023) (Exh. 1).

[9] *Guidance to Nation's Retail Pharmacies: Obligations Under Fed. Civil Rights Laws to Ensure Access to Comprehensive Reproductive Health Care Servs.*, https://www.hhs.gov/civil-rights/for-individuals/special-topics/reproductive-healthcare/pharmacies-guidance/index.html; https://web.archive.org/web/20230201194843/https:/www.hhs.gov/sites/default/files/pharmacies-guidance.pdf (last visited Feb. 28, 2023) (Exh. 2).

**B. The Pharmacy Mandate**

18. The Pharmacy Mandate stipulates that "as recipients of federal financial assistance, including Medicare and Medicaid payments, pharmacies are prohibited under law from discriminating based on race, color, national origin, sex, age, and disability in their programs and activities. This includes supplying prescribed medications; making determinations regarding the suitability of prescribed medications for a patient; and advising a patient about prescribed medications and how to take them."[10]

19. The Pharmacy Mandate requires pharmacies to dispense drugs for abortions as a condition of receiving Medicare and Medicaid payments by threatening pharmacies with legal action.[11]

20. The Pharmacy Mandate asserts that "discrimination against pregnant [women] on the basis of their pregnancy or related conditions (examples below) is a form of sex discrimination. . . . Under federal civil rights law, pregnancy discrimination includes discrimination based on current pregnancy, past pregnancy, potential or intended pregnancy, and medical conditions related to pregnancy or childbirth."[12]

21. Citing Section 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 18116, and its implementing regulation, 45 C.F.R. part 92, the Pharmacy Mandate threatens enforcement actions

[10] Exh. 1 at 2.

[11] *Id.*; Exh. 2.

[12] Exh. 2 at 3–4.

under Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 197, and Section 504 of the Rehabilitation Act of 1973.[13]

22. None of those statutes require pharmacies to stock or dispense drugs for abortion purposes. None address "termination of pregnancy" discrimination. Nor does the ACA's Section 1557 implementing regulations. And, indeed, Defendants know this. In August 2022, they issued a notice of proposed rulemaking that would amend the agency's interpretation of Section 1557 to include a prohibition against "termination of pregnancy" discrimination and would ignore the statutory bar for doing so under Title IX. 87 Fed. Reg. 47,824 (Aug. 4, 2022).

23. And that isn't the only direct conflict between the Pharmacy Mandate and the statute it misinterprets. Indeed, the ACA includes language specifically rejecting the Pharmacy Mandate's interpretation:

> No Preemption of State Laws Regarding Abortion
>
> Nothing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions.

42 U.S.C. § 18023(c)(1).

24. The Pharmacy Mandate directly contradicts Title IX. Title IX specifically prohibits persons and entities from being required to "provide or pay for any benefit or service, including the use of facilities, related to an abortion." 20 U.S.C. § 1688. And as with the ACA, Defendants know that Title IX does not address "termination of pregnancy" discrimination: In June, the Department of Education issued a notice of proposed rulemaking that would "[a]rticulate [its]

[13] *Id.* at 2; Exh. 1; *see also* 45 C.F.R. part 92.

understanding that sex discrimination [as used in the statutory text of Title IX] includes discrimination on the basis of . . . pregnancy or related conditions," including "termination of pregnancy."[14]

25. The Pharmacy Mandate also conflicts with the Hyde Amendment, which prohibits use of federal dollars to fund abortions except when the pregnancy is the result of rape or incest, or if the woman's life is in danger. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07. By conditioning pharmacies' receipt of federal funds on their dispensing of abortion-inducing drugs, Defendants' Pharmacy Mandate uses federal dollars to fund abortions outside the allowable scope of the Hyde Amendment. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07.

**C. Texas Abortion Laws**

**1. Human Life Protection Act**

26. Under Texas's Human Life Protection Act, "[a] person may not knowingly perform, induce, or attempt an abortion." Act of May 25, 2021, 87th Leg., R.S., ch. 800, 2021 Tex. Sess. Law Serv. 1887 (H.B. 1280) (codified at Tex. Health & Safety Code Ch. 170A). That prohibition does not apply if the woman on whom the abortion is performed "has a life-threatening physical condition" arising from a pregnancy that places her "at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed." H.B. 1280 at § 2 (codified at Tex. Health & Safety Code § 170A.002(b)(2)). The potential criminal penalty for violating this law is anywhere from two years to life in prison and a civil penalty not less than

[14] 87 Fed. Reg. 41391 (July 12, 2022); *id.* at 41,394.

$100,000. *Id.* (codified at Tex. Health & Safety Code §§ 170A.004–.005); Tex. Penal Code §§ 12.32–.33.

**2. Pre-*Roe* Criminal Statutes**

27. In addition to the Human Life Protection Act, Texas statutes predating *Roe* also address the subject of abortion. *See* TEX. REV. CIV. STAT. arts. 4512.1–.4, .6. (former TEX. PENAL CODE arts. 1191–1194, 1196 (1925)). Under those statutes, any person who causes an abortion is guilty of an offense and shall be confined in a penitentiary. *Id.* at 4512.1. Moreover, an individual may not act as an accomplice to abortion or an attempted abortion. *Id.* at 4512.2–.3. However, it is not an offense if the abortion is performed under "medical advice for the purpose of saving the life of the mother." *Id.* at 4512.6.

28. Texas never repealed these statutes. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 399, § 5(a), 1973 Tex. Gen. Laws 883, 995 ("provid[ing] for the transfer of articles of the Penal Code of Texas, 1925, which are not repealed by this Act to the civil statutes or other appropriate places within the framework of Texas statute law, without reenactment and without altering the meaning or effect of the unrepealed articles."). They therefore remain current law. *See Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) ("When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it.").

**D. The Effects of the Pharmacy Mandate in Texas**

29. Texas is injured because the Pharmacy Mandate purports to preempt its laws by requiring pharmacies to stock and dispense drugs for abortions even if doing so would violate State law. This

violates Texas's "sovereign interest in the power to create and enforce a legal code." *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (quotation omitted).

30. By requiring pharmacies that receive Medicare and Medicaid funds—including retail pharmacies operated by Texas Tech University Health Sciences Center—to dispense drugs for abortions when the life of the mother is *not* in danger, the Pharmacy Mandate flouts *Dobbs*'s holding that States may regulate abortion and directly infringes on Texas's sovereign and quasi-sovereign authority. *See* Declaration of Eric Bentley (Exh. 4).

31. Compliance with State laws and regulations is an operational requirement for Texas pharmacies. 22 Tex. Admin. Code § 291.123(c)(3)(C)(iii); *id.* § 291.153 (d)(1)(A)(i)(II). Texas pharmacists are required to abide by State laws governing the practice of pharmacy. *See*, *e.g.*, 22 Tex. Admin. Code § 295.3; Tex. Occ. Code § 565.001(a)(12). That requirement includes compliance with Texas's abortion laws. Moreover, subject to limited exceptions, Texas law prohibits a person from "knowingly provi[ding] an abortion-inducing drug to a pregnant woman for the purpose of inducing an abortion." Tex. Health & Safety Code § 171.063.

32. Further, were it legal, the Pharmacy Mandate would require pharmacists to dispense drugs for abortions even if doing so would violate their professional judgment. Such a requirement violates Texas law, under which "a pharmacist has the exclusive authority to determine whether or not to dispense a drug." Tex. Occ. Code § 551.006.

33. Texas Tech University Health Sciences Center operates retail pharmacies that receive federal funds through Medicare and Medicaid. The Pharmacy Mandate requires Texas Tech to choose between violating State law or jeopardizing its ability to participate in Medicare and Medicaid. *See* Exh. 4.

## E. Plaintiff Mayo Pharmacy

### 1. Mayo Pharmacy's Religious Beliefs and the Operation of Mayo Pharmacy According to Such Beliefs

34. Kevin Martian, PharmD, is the sole owner of Mayo Pharmacy, Inc., an independent pharmacy in Bismarck, North Dakota.

35. Mayo Pharmacy is a closely held corporation.

36. Martian is a practicing and believing Catholic Christian.

37. Martian sincerely believes that the Catholic faith does not allow him to violate Catholic teachings when he operates Mayo Pharmacy. Martian thus sincerely believes that his operation of Mayo Pharmacy must be guided by Catholic moral and ethical teachings, that the adherence of his business practice to such Catholic moral and ethical teachings is a genuine calling from God, that his Catholic faith prohibits him from severing his religious beliefs from his daily business practice, and that his Catholic faith requires him to integrate the gifts of the spiritual life and the virtues, morals, and ethical social principles of Catholic teaching into his life and work.

38. Mayo Pharmacy shares and exercises such beliefs through Martian's ownership and operation of the pharmacy consistent with state law.

39. Mayo Pharmacy's website states that the pharmacy is "an independent Catholic-founded pharmacy dedicated to its community" that "follow[s] the bioethical directives of the United States Conference of Catholic Bishops."[15]

---

[15] *About Us*, Mayo Pharmacy, https://www.mayopharmacynd.com/ (last visited Feb. 17, 2023).

40. Martian has, for a substantial period of time to the present, operated Mayo Pharmacy in accordance with and in promotion of Catholic ethical and moral principles.[16]

41. The Catholic Church teaches that abortion, committed by drug or otherwise, is an intrinsic evil.

42. As a matter of religious faith, Martian and Mayo Pharmacy believe that Catholic teaching prohibiting abortion by drugs is among the religious ethical teachings that Martian and Mayo Pharmacy must follow.

43. Consequently, Martian and Mayo Pharmacy believe that it would be immoral and sinful for Mayo Pharmacy to intentionally dispense or otherwise provide drugs such as methotrexate or misoprostol for abortion purposes, or to stock or restock such drugs for those purposes.

44. Consistent with Martian and Mayo Pharmacy's religious commitments, Mayo Pharmacy does not stock or dispense drugs for abortion purposes. It also does not stock or dispense contraceptives, again in order to remain faithful to Martian and Mayo Pharmacy's religious beliefs.

45. While Mayo Pharmacy does stock and dispense the drugs methotrexate and misoprostol for non-abortion purposes, Mayo Pharmacy does not dispense such drugs for abortion purposes and seeks to continue not to do so.

**2. Mayo Pharmacy's Injuries**

46. The Pharmacy Mandate requires Mayo Pharmacy to stock and dispense drugs for abortion purposes as a condition of receiving patients who are covered by federally funded programs such as Medicare and Medicaid.

---

[16] *See Mayo Pharmacy: A Catholic Pharmacy Passionate About Life*, National Catholic Register, (Jan. 14, 2023) https://www.ncregister.com/features/mayo-pharmacy-a-catholic-pharmacy-passionate-about-life (last visited Feb. 17, 2023).

47. Unless relief issues from this Court, Mayo Pharmacy will be forced to either lose customers whose payors receive Medicaid, Medicare, or other federal assistance, or violate Mayo Pharmacy's sincerely held religious beliefs regarding the stocking and dispensing of drugs for abortion purposes.

48. The Pharmacy Mandate exposes Mayo Pharmacy to substantial competitive disadvantages by forcing Mayo Pharmacy to refrain from serving customers that receive Medicaid, Medicare, or other federal assistance.

49. The Pharmacy Mandate exposes Mayo Pharmacy to substantial financial penalties for refusing to stock or dispense drugs for abortion purposes.

50. The Pharmacy Mandate imposes a substantial burden on Mayo Pharmacy's religious exercise by forcing Mayo Pharmacy to violate its sincerely held religious belief that intentionally or knowingly providing drugs such as methotrexate or misoprostol for abortion purposes would be immoral and sinful.

51. Moreover, Defendants failed to give the public an opportunity to comment on the Pharmacy Mandate before the mandate was issued.

52. If Defendants would provide an opportunity for public comment on the Pharmacy Mandate, Mayo Pharmacy would comment.

53. Without injunctive and declaratory relief as requested herein, Mayo Pharmacy is suffering and will continue to suffer irreparable harm.

## IV. CLAIMS FOR RELIEF

### COUNT 1, By All Plaintiffs: The Pharmacy Mandate Exceeds Statutory Authority and Is Not in Accordance with Law (5 U.S.C. §706).

54. Plaintiffs reassert the factual allegations set forth above in paragraphs 1-53.

55. The Pharmacy Mandate is being "applied . . . in a way that indicates it is binding." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). Therefore, it is a final agency action subject to judicial review under the APA.

56. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

57. The Pharmacy Mandate attempts to impose a legal duty on pharmacies and pharmacists in Texas and nationwide to dispense drugs for abortion purposes. Defendants have no authority to impose such a duty, much less when it would violate State law.

58. Whether Defendants possess the political and constitutional authority they claim is a major question of "deep economic and political significance" that Courts will not assume that Congress has assigned to the Executive Branch. *See King v. Burwell*, 576 U.S. 473, 486 (2015) (quotation marks omitted); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). "We presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies." *West Virginia v. Envtl. Prot. Agency*, 142 S. Ct. 2587, 2609 (2022) (internal quotations omitted). An attempt to disqualify 60,000 pharmacies nationwide from taking federally funded patients unless they dispense abortion drugs, and overrule state abortion laws by attaching strings to Medicaid and Medicare funding, is a sizeable elephant; HHS's claim to have found it in a mousehole that the ACA, the Rehabilitation Act, and Title IX disclaim exists demands scrutiny. *Cf. Whitman v. Am. Trucking Assns.*, 531 U.S. 457, 468 (2001).

59. In the alternative, to the extent that HHS's final regulations implementing Title IX, Section 1557 of the ACA, or Section 504 of the Rehabilitation Act are interpreted to require pharmacies to stock or dispense drugs for abortion purposes, those final regulations exceed the agency's statutory authority under the APA for the same reasons the Pharmacy Mandate does so.

**Count 1(A), By All Plaintiffs: The Pharmacy Mandate conflicts with federal law.**

60. Plaintiffs reassert the factual allegations set forth above in paragraphs 1-53.

61. The Pharmacy Mandate conflicts with the ACA—the statute Defendants contend purportedly authorizes this mandate. The ACA provides:

> No Preemption of State Laws Regarding Abortion
>
> Nothing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions.

42 U.S.C. § 18023(c)(1).

62. The Pharmacy Mandate conflicts with Title IX. Title IX does not protect against "termination of pregnancy" discrimination, and it specifically prohibits requiring persons or entities to assist or participate in the provision of an abortion. 20 U.S.C. §§ 1681, 1688. Nevertheless, the Pharmacy Mandate asserts that "discrimination against pregnant people on the basis of their pregnancy or related conditions . . . is a form of sex discrimination."[17] That is not the law under Title IX—or any of the other statutes incorporated by reference in Section 1557 of the ACA.

63. HHS cannot amend the statutes through agency rulemaking.

---

[17] Exh. 2 at 3.

64. None of the statutes incorporated by reference in Section 1557 concern "termination of pregnancy" discrimination. Defendants know this and nevertheless state in the Pharmacy Mandate that "discrimination against pregnant people on the basis of their pregnancy or related conditions . . . is a form of sex discrimination," including termination of pregnancy.[18] Even if Defendants could amend those statutes through agency rulemaking to make this true, they have not. Accordingly, the Pharmacy Mandate is a new legislative rule that alters pharmacies' legal obligations. *See Truckers United for Safety v. Fed. Highway Admin.*, 139 F.3d 934 (D.C. Cir. 1998).

65. The Pharmacy Mandate also conflicts with the Hyde Amendment, which prohibits federal dollars from being used to fund abortions except when the pregnancy is the result of rape or incest, or if the woman's life is in danger. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07. By conditioning pharmacies' receipt of federal funds on their dispensing abortion-inducing drugs, Defendants' Pharmacy Mandate uses federal dollars to fund abortions outside the allowable scope of the Hyde Amendment. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H., Tit. V, §§ 506–07.

66. The Pharmacy Mandate also conflicts with the ACA, which prohibits the Secretary from issuing any regulations that "violate[] . . . the ethical standards of health care professionals." 42 U.S.C. § 18114.

67. The Department of Justice's (DOJ) appropriation act prevents it from using any funds to "require any person to perform, or facilitate in any way the performance of, any abortion." Consolidated Appropriations Act of 2022, Pub. L. 117-103, 136 Stat. 131, Div. B., Tit. II, § 203.

[18] *Id.*

DOJ's defense of the Pharmacy Mandate would necessarily spend federal funds to facilitate abortions.

68. In the alternative, to the extent that HHS's final regulations implementing Title IX, Section 1557 of the ACA, or Section 504 of the Rehabilitation Act are interpreted to require pharmacies to stock or dispense drugs for abortion purposes, those final regulations are contrary to law under the APA for the same reasons the Pharmacy Mandate does.

**Count 1(B), By the State: The Pharmacy Mandate is an unconstitutional exercise of the Spending Power.**

69. Texas reasserts the factual allegations set forth above in paragraphs 1-33.

70. The Pharmacy Mandate is an unconstitutional exercise of the Spending Clause power.

71. The Affordable Care Act does not condition—let alone unambiguously condition—the receipt of federal funds on providing drugs for abortions. On the contrary, it specifically provides that it does not preempt State abortion laws. 42 U.S.C. § 18023(c)(1).

72. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously" so "States [can] exercise their choice knowingly." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). It must give "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply" with conditions in the Act. *Id.* at 25.

73. The executive branch cannot impose conditions on States' spending of federal monies if the Constitution would prohibit it from imposing those conditions directly on the States.

74. Because the federal government cannot force Texas to require that pharmacies dispense drugs for abortions, the Pharmacy Mandate's attempt to do so as a condition of funding is an unconstitutional exercise of Spending Power, U.S. Const. art. I, § 8, cl. 1, and must be enjoined. *See* 5 U.S.C. § 706(A), (c).

75. Defendants did not act in accordance with the law and exceeded their statutory authority when they issued the Pharmacy Mandate.

**COUNT 2, By All Plaintiffs: Failure to Conduct Notice and Comment (5 U.S.C. § 553).**

76. Plaintiffs reassert the factual allegations set forth above in paragraphs 1-53.

77. Defendants must comply with the APA's notice-and-comment requirements before promulgating a rule. 5 U.S.C. § 553.

78. Subject to certain exceptions not relevant here, a "[g]eneral notice of proposed rulemaking shall be published in the Federal Register." 5 U.S.C. § 553(b). "After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(c). "The required publications or service of a substantive rule shall be made not less than 30 days before its effective date [with applicable exceptions]." 5 U.S.C. § 553(d).

79. The Pharmacy Mandate substantively changes the conditions for payment for services by requiring pharmacies that receive federal funds to dispense drugs for abortions, notwithstanding their obligations under Texas law. Accordingly, Defendants were required to provide an opportunity for public notice and comment.

80. Even if Defendants were authorized by statute to promulgate the Pharmacy Mandate, which they are not, the Court would still have to set it aside for failure to comply with the notice-and-comment requirements. "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

81. In the alternative, to the extent that HHS's final regulations implementing Title IX, Section 1557 of the ACA, or Section 504 of the Rehabilitation Act are interpreted to require pharmacies to stock or dispense drugs for abortion purposes, those final regulations violated the notice and comment requirements of the APA because they failed to inform the public of that mandate, and the agency concealed the nature of that requirement, preventing knowledge sufficient to bring a legal challenge until July 2022.

**COUNT 3, By All Plaintiffs: Arbitrary and Capricious Agency Action (5 U.S.C. § 706(2)(A)).**

82. Plaintiffs reassert the factual allegations set forth above in paragraphs 1-53.

83. An agency rule is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

84. "[A]gency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency "rule" is "the whole or a part of an agency statement or general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." *Id.* at § 551(4).

85. An agency action is arbitrary or capricious if the agency fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice

made." *State Farm*, 463 U.S. at 43. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary and capricious." 5 U.S.C. § 706(2)(A).

86. Defendants did not engage in reasoned decision-making, but instead acted arbitrarily and capriciously, in issuing the Pharmacy Mandate.

87. The Pharmacy Mandate was issued in response to the President's Executive Order to counteract the effects of *Dobbs*—not as a result of reasoned decision-making.[19] Mere executive fiat falls well short of the requirements of a "satisfactory explanation."

88. The Pharmacy Mandate failed to acknowledge or explain itself as a change in the agency's position and failed to discuss reliance interests or alternatives.

89. The Pharmacy Mandate is arbitrary and capricious and must be set aside.

90. In the alternative, to the extent that HHS's final regulations implementing Title IX, Section 1557 of the ACA, or Section 504 of the Rehabilitation Act are interpreted to require pharmacies to stock or dispense drugs for abortion purposes, those final regulations are arbitrary and capricious under the APA because they failed to describe a rationale for that mandate, acknowledge its origination or change in position, or discuss reliance interests or alternatives, and HHS hid the nature of that requirement, preventing knowledge sufficient to bring a legal challenge until July 2022.

**COUNT 4, By Mayo Pharmacy: Religious Freedom Restoration Act (RFRA) (42 U.S.C. § 2000bb, et seq.).**

91. Mayo Pharmacy reasserts the factual allegations set forth above in paragraphs 1-53.

[19] *See* Exh. 1; Exh. 2.

92. The Religious Freedom Restoration Act (RFRA) prohibits the government from substantially burdening a person's exercise of religion unless the government can demonstrate that application of the burden to that person is in furtherance of a compelling governmental interest and is the least restrictive means of achieving it. 42 U.S.C. § 2000bb-1.

93. Mayo Pharmacy holds sincerely held religious beliefs that prohibit Mayo Pharmacy and its owner, Martian, from stocking or dispensing drugs for abortion purposes.

94. Mayo Pharmacy's compliance with these beliefs constitutes the exercise of religion.

95. Mayo Pharmacy exercises its sincerely held religious beliefs by any and all of its operations, including by providing pharmacy services and by expressing messages in its pharmacy practices.

96. Mayo Pharmacy wishes to exercise its religion by operating without stocking and/or dispensing drugs for abortion purposes except to the extent consistent with its religious beliefs.

97. The Pharmacy Mandate exposes Mayo Pharmacy to substantial financial penalties for continuing its religious exercise.

98. The Pharmacy Mandate exposes Mayo Pharmacy to substantial competitive disadvantages if it is forced to refrain from serving patients with payors who are federally funded.

99. The Pharmacy Mandate imposes a substantial burden on Mayo Pharmacy's religious exercise and coerces Mayo Pharmacy to change or violate its sincerely held religious beliefs.

100. The Pharmacy Mandate furthers no compelling governmental interest and is not narrowly tailored to advance any compelling governmental interest as imposed on Mayo Pharmacy.

101. The Pharmacy Mandate is not the least restrictive means of advancing a compelling government interest or any government interest as imposed on Mayo Pharmacy.

102. If, in the alternative, Section 1557 of the ACA, Section 504 of the Rehabilitation Act, or Title IX of the Education Amendments of 1972, as amended, or any HHS regulations implementing those statutes, are deemed to require stocking or dispensing drugs for abortion purposes in violation of Mayo Pharmacy's sincerely held religious beliefs, those statutes and regulations violate RFRA for the same reasons as the Pharmacy Mandate.

103. Therefore, the Pharmacy Mandate, and in the alternative, Section 1557 of the ACA, Section 504 of the Rehabilitation Act, or Title IX of the Education Amendments of 1972, as amended, or any HHS regulations implementing those statutes, as applicable, violate RFRA, and Mayo Pharmacy should be provided the relief requested below.

**DECLARATORY JUDGMENT**

104. The Declaratory Judgment Act authorizes federal courts to declare the rights of litigants. 28 U.S.C. § 2201. The issuance of a declaratory judgment can serve as the basis for an injunction to give effect to the declaratory judgment. *Steffel v. Thompson*, 415 U.S. 452, 461 n.11 (1974).

105. For the reasons described above, Plaintiffs are entitled to a declaration that Defendants are violating the law and the Pharmacy Mandate is unlawful, unconstitutional, and unenforceable.

## V. Prayer for Relief

Plaintiffs respectfully request that the Court:

a. Hold unlawful and set aside the Pharmacy Mandate;

b. Declare Defendants' actions unlawful;

c. Issue a permanent injunction prohibiting Defendants from enforcing the Pharmacy Mandate;

d. Issue a permanent injunction prohibiting Defendants from enforcing the Pharmacy Mandate's interpretation of the discrimination and enforcement provisions of the statutes incorporated by reference in Section 1557 of the ACA or Section 504 of the Rehabilitation

Act;

e. Issue the same permanent injunctive and declaratory relief for Mayo Pharmacy under the APA and RFRA;

f. Disqualify the Department of Justice from defending the action under Consolidated Appropriations Act of 2022, Pub. L. 117-103, 136 Stat. 131, Div. B., Tit. II, § 203;

g. Award Plaintiffs costs and reasonable attorneys' fees;

h. Award such other relief as the Court deems equitable and just.

Dated February 28, 2023.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division
Texas Bar No. 24087727
Christopher.Hilton@oag.texas.gov

*/s/ Amy Snow Hilton*
**AMY SNOW HILTON**
Assistant Attorney General
Texas Bar No. 24097834
Amy.Hilton@oag.texas.gov

Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR THE STATE OF TEXAS**

/s/ *Ryan L. Bangert*
**Ryan L. Bangert**
TX Bar No. 24045446
rbangert@ADFlegal.org

Alliance Defending Freedom
Resaca Plaza
11701 FM2244
Bee Cave, TX 78738

Telephone: (571) 707-4655
Facsimile: (571) 707-4790

**Matthew S. Bowman***
DC Bar No. 993261
mbowman@ADFlegal.org

**Andrea R. Dill****
TX Bar No. 24116086
adill@ADFlegal.org

Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622

**COUNSEL FOR MAYO PHARMACY, INC.**

**Pro Hac Vice* application forthcoming
**Application for admission forthcoming

**DECLARATION UNDER PENALTY OF PERJURY**

I, Kevin Martian, PharmD, a citizen of the United States and a resident of North Dakota, on behalf of Plaintiff Mayo Pharmacy, Inc. as its owner, declare under penalty of perjury under 28 U.S.C. § 1746 that paragraphs 2 and 34-53 in the above Amended Complaint are true and correct to the best of my knowledge.

Executed this 28th day of February, 2023 at Bismarck, North Dakota.

Kevin Martian, PharmD